(608 P.2d 1032)

No. 50,548

YVONNE E. BURCH, *et al., Appellants,* v. C. B. DODGE, JR., A. GLENN SOWDERS, JR., and MIDDLETON S. CARROLL, as Trustees of the Howard M. Burch Trust No. 1, *Appellees,* v. MARY CAROLYN DREHER, *et al., Interpleaded Claimants.*

504

Opinion filed March 28, 1980.

*J. Eugene Balloun,* of Payne & Jones, Chartered, of Olathe, for appellants.

*G. Peter Bunn, III,* of Soden, Eisenbrandt, Isenhour & Gates, of Mission, for appellees.

Before FOTH, C.J., ABBOTT and MEYER, JJ.

ABBOTT, J.: This is an appeal by Yvonne E. Burch from an order surcharging A. Glenn Sowders, Jr., as trustee, the amount of $8,207.19 and granting to Sowders a trustee fee in the amount of $5,000.

The surcharge arises out of Sowders' admitted failure to invest trust assets that came into his possession as a trustee of the Howard M. Burch Trust No. 1. Sowders suggested to the court that a surcharge of 5 percent simple interest on $50,000 from November 24, 1974, to May 22, 1977, be imposed on him, and agreed that by using those figures his failure to invest the trust assets resulted in a loss of $8,207.19 in interest to the trust. The court surcharged that sum. Mrs. Burch, Howard Burch's wife, takes the position that the award of $5,000 to Sowders as a trustee fee is excessive and unreasonable under the circumstances; that the trial court abused its discretion in awarding any trustee fee in view of Sowders' failure to invest the assets of the trust.

There are three trustees. Two of the trustees, C. B. Dodge, Jr., and Middleton S. Carroll, are not parties to this action. They filed a waiver of trustee fees and consented that any fees due the trustees be paid to Sowders. The record indicates they did not participate in the trust and did not keep themselves informed concerning the trust. No attempt was made to surcharge them and no further reference will be made to them in this opinion.

The trial court's findings of fact and conclusions of law are inadequate to disclose the controlling facts or the basis of the court's findings, and thus meaningful appellate review is precluded. This is brought on in part by the fact that the parties apparently presented no evidence per se. They filed pleadings,

presented oral argument (no record was made) and filed briefs in which the parties put forth their factual contentions. The contentions are not in total agreement and Sowders himself appears to have taken at least two different positions, that prior to November of 1974 he was to invest all monies on hand except $7,500 and subsequently that an agreement was made to invest only the amount that had previously been invested in treasury bills. In either event, Sowders' suggestion to the trial judge concerning the amount of a surcharge is not consistent with what he alleges the agreement to be.

In order to understand our dilemma and the position of the parties, it is necessary to review the receipts and disbursements of the trust fund. The final accounting was not contested other than to contend additional interest was due, and it shows the first receipt to be $10,081.79 on March 1, 1972. No further funds were received for over two years, then a bowling alley was sold and $61,322.29 was received by the trustee on May 20, 1974. Mrs. Burch argues that the trustee should have invested the $10,081.79 received on March 1, 1972, in an interest-bearing account. Sowders contends he was not sure the money, which came from a VA insurance policy, belonged to the trust until a court order was filed on March 25, 1974. We note the policy was listed as a trust asset in the trust agreement. We further note Sowders made disbursements of over $5,000 from the insurance money to pay trust obligations. Over $4,000 of that sum was paid to the attorneys for the trustee pursuant to a court order, and the attorneys now argue that the trustee could not invest the funds because he was not sure the funds belonged to the estate. Their present position seems somewhat inconsistent with the payment of expenses from the insurance fund.

The court entered an order on March 25, 1974, when the bowling alley was sold, that the trust money was to be invested pursuant to agreement between the trustee and Mrs. Burch, or if they were unable to agree, then pursuant to court order. Other litigation was in progress and Sowders alleges the parties agreed to and did invest $48,872.08 in treasury bills on May 20, 1974. Mrs. Burch does not deny this agreement. Disbursements were made out of the estate on May 20, 1974, reducing the uninvested balance in the trustee account after the treasury bills were purchased to $10,216.58. Sowders claimed in his first brief that the

parties agreed to leave $7,500 in immediately available funds to pay necessary and immediate expenses. Mrs. Burch does not deny this, but claims a day-in, day-out passbook account still would have made the funds immediately available. During July of 1974, an additional $25,299.01 was received by the estate. Interest of $997.43 was received on the treasury bills on August 22, 1974, and an additional $1,127.92 interest was received on November 21, 1974. By November 21, 1974, some $4,123.62 had been disbursed, leaving a balance of $33,517.32 in uninvested funds, some $26,000 more than the sum Sowders claims Mrs. Burch agreed not to invest. The money from the treasury bills came back into the trust account and a total of $82,389.40 was then uninvested. The parties apparently made some agreement in November of 1974 concerning the investment of the funds. Counsel for Mrs. Burch admits to a discussion about investing "the funds" in a day-to-day, interest-bearing savings account. Sowders alleges the agreement was to invest the treasury bill money in a day-in, day-out savings account.

There were no receipts in 1975, and after disbursements, $75,701.97 remained on hand to start 1976. The balance was substantially reduced to $48,748.81 in January 1976, and at the start of 1977 it stood at $50,124.27; there were no receipts or disbursements during 1977. In Sowders' suggested surcharge, which appears to have been adopted in toto by the trial judge, interest was computed to May 22, 1977. Sowders' accounting shows interest income of $587 as of the last statement from the Plaza Bank & Trust Company dated May 31, 1978, a figure far less than would have been produced had the funds available from May 1977 through May 1978 been invested at 5 percent. Possibly some legitimate reason exists that will be disclosed by adequate trial court findings.

The trial judge's only finding concerning the surcharge is:

"That trustee A. Glenn Sowders, Jr., shall be surcharged the sum of Eight Thousand Two Hundred Seven and 19/100 Dollars ($8,207.19), for back due interest which should have been earned by the trust funds and he shall pay forthwith into the trust corpus the sum of Eight Thousand Two Hundred Seven and 19/100 Dollars ($8,207.19)."

We are unable to ascertain from the single finding the dates between which the trial court determined the funds should have been invested, or the amount that should have been invested at

any given time; or whether the parties made an agreement about how the funds should be invested and, if so, the nature and extent of that agreement, or any changes thereto. Sowders admits to, and the record conclusively shows, mismanagement of the trust funds, but none of the parties dispute the cash balances on hand.

We recognize that the Supreme Court in *Celco, Inc. of America v. Davis Van Lines, Inc.*, 226 Kan. 366, 369, 598 P.2d 188 (1979), appears to have held that a litigant must object to inadequate findings and conclusions at the trial level, which gives the trial court an opportunity to correct them; otherwise, an appellate court may presume the trial court found all of the facts necessary to support the judgment. This appears to be a good rule, as it allows a trial court an opportunity to correct a mistake by granting a new trial; and in the event a mistake was not made, the trial court speeds up the judicial process by supplying additional findings and conclusions of law so that appellate review can be had without the delay of remanding, which results in unnecessary expense to the litigants and wastes judicial time. However, findings are also for the benefit of the appellate courts, as the Supreme Court pointed out in *Henrickson v. Drotts,* 219 Kan. 435, 441, 548 P.2d 465 (1976), where it stated:

"The requirements of K.S.A. 60-252 and Rule No. 116 [now Rule No. 165, 225 Kan. lxxii] of this court are for the benefit of this court in facilitating appellate review. Waiver of such requirements is not within the rights of the parties or the authority of the court below."

The record in this case is not consistent with any findings we could presume the trial court made, and thus in the absence of adequate findings of fact and conclusions of law, we vacate the judgment insofar as it surcharges the trustee and remand the case for new findings. *Mies v. Mies,* 217 Kan. 269, 535 P.2d 432 (1975); *Martin v. Hinnen,* 3 Kan. App. 2d 106, 590 P.2d 589 (1979). For the trial court's guidance, we give a brief analysis of our view of the matter.

The concept of surcharge was recently explained by the Kansas Supreme Court in *Jennings v. Murdock,* 220 Kan. 182, Syl. ¶ 14, 553 P.2d 846 (1976), as follows: "Surcharge is a remedy designed to make the trust estate whole, primarily where losses have been incurred through the negligence or bad faith of the trustee." Mrs. Burch contends that the proper measure of damages to make the trust whole should be either $12,395.73 (5 percent per annum

interest on the assets of the trust from March 1, 1972, through September 25, 1978) or $14,287.90 (6 percent per annum interest on the assets of the trust). Basically, plaintiff's position is that 5 percent per annum interest income on the trust corpus accumulated over the entire life of the trust is the *minimum* surcharge to which she is entitled and that it really should have earned income over the entire period based on the legal rate of return of 6 percent per annum. Plaintiff cites K.S.A. 16-201 as authority for the proposition that interest should be paid at the legal rate of 6 percent per annum. Plaintiff also relies on foreign authorities dealing with improper or imprudent sales of assets that hold the aggrieved beneficiaries are entitled to interest at the legal rate of return. Annot., 58 A.L.R.2d 674. We are of the opinion that the rate of interest to be surcharged is discretionary with the court. It is stated in 90 C.J.S., Trusts 342:

"The rate of interest to be charged a trustee is determined by the circumstances of the particular case, and is in the discretion of the court.

"Where a trustee is liable for the payment of interest, there are no particular rates applicable to different classes of cases, but the rate proper to be exacted is determined according to the facts and circumstances of each particular case, and is wholly within the discretion or judgment of the court, which discretion must be exercised equitably in the light of the character of the breach of trust and the degree of fault of the trustee under all the circumstances."

Restatement (Second) of Trusts § 207 (1959) states:

"(1) Where the trustee commits a breach of trust and thereby incurs a liability for a certain amount of money with interest thereon, he is chargeable with interest at the legal rate or such other rate as the court in its sound discretion may determine, but in any event he is chargeable with interest actually received by him or which he should have received."

The burden of proving an abuse of this discretion is on the plaintiff, and this Court will not reverse the trial court's decision unless it can be said that reasonable persons could not differ as to the impropriety of the action taken by the court. *McColm v. Stegman,* 3 Kan. App. 2d 416, Syl. ¶ 2, 596 P.2d 167 (1979). Mrs. Burch is in a poor position to argue abuse of discretion concerning the rate of interest, having set forth in her brief to the trial court that "[t]he plaintiff suggests that it would have been reasonable to place the trust fund in a day-in, day-out passbook savings account at an interest rate of five percent (5%), which has been the prevailing rate over the past several years." Having invited the court to use 5 percent as the applicable interest rate, a

litigant is now precluded from claiming error by reason of the trial judge having complied with the suggestion. *Grimm v. Pallesen,* 215 Kan. 660, 666, 527 P.2d 978 (1974); *State v. Gross,* 221 Kan. 98, 100, 558 P.2d 665 (1976).

In any event, the general rule for the rate of interest to be surcharged is set forth in Restatement (Second) of Trusts § 207 (1959) as follows:

"Ordinarily if a breach of trust consists only in the failure of the trustee to invest trust money, or in the failure to sell trust property and to invest the proceeds, the trustee is chargeable with interest at the current rate of return on trust investments and not with interest at the legal rate."

In our view, K.S.A. 16-201 does not dictate a contrary result, as it merely defines the legal rate of interest to be applied in debtor-creditor situations where no other rate of interest is agreed upon. It does not by its terms apply to the investment duties of a fiduciary, as that duty is governed by K.S.A. 1979 Supp. 17-5004.

Sowders' proposal to the trial court is based on simple interest and does not take into account any compounding effect. If the trial court finds that the parties agreed to invest only a set amount of the funds on hand pursuant to the court order, then the court must determine whether there was an agreement to withdraw the interest as it was paid from the interest-bearing account rather than to allow it to compound. In the absence of an express agreement, a trustee's duty under K.S.A. 1979 Supp. 17-5004 would include the investment of interest income, and the estate would not be made whole unless the interest were compounded.

The amount of compensation due the trustee and whether or not his breach of trust should be cause to reduce or forfeit that compensation lies within the sound discretion of the trial court (K.S.A. 59-1711 and 59-1717). The Kansas Supreme Court stated in *Achenbach v. Baker,* 154 Kan. 252, 254, 118 P.2d 584 (1941):

"[T]he amount of compensation to be allowed is for determination of the trier of the facts, and . . . the action of the trial court will not be set aside unless arbitrary or capricious, unsupported by substantial evidence, and unless the allowances made are clearly shown to be unreasonable or unlawful."

The surcharge is designed to make the estate whole. Thus, we cannot say the trial judge abused his discretion solely on the basis of the trustee's failure to invest the funds, as the trial court will surcharge the trustee a sufficient amount to make the estate whole and thus the failure to invest will not result in a loss or detriment

to the trust. The defendant served as a trustee for eight years and supervised litigation during that time. Based on the record before us, we cannot say the trial court abused its discretion in awarding a fee, nor can we say the fee awarded was excessive, and we therefore affirm that part of the award.

Sowders has requested attorney fees for this appeal. We have reviewed the supporting documents and briefs and are of the opinion that the issues raised on this appeal are of no benefit to the trust, but are personal in nature for the trustee's admitted failure to carry out his duty; therefore, attorney fees are denied.

Affirmed in part and reversed in part.