NOT DESIGNATED FOR PUBLICATION

No. 122,116

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JERRID WAYNE LOGAN,
*Appellant*.


MEMORANDUM OPINION

Appeal from Saline District Court; JARED B. JOHNSON, judge. Opinion filed February 19, 2021. Affirmed.

*Carol Longnecker Schmidt*, of Kansas Appellate Defender Office, for appellant.

*Ellen Mitchell*, county attorney, *Lindell W. Crowe*, legal intern, and *Derek Schmidt*, attorney general, for appellee.


Before GARDNER, P.J., SCHROEDER, J. and WALKER, S.J.


PER CURIAM: Jerrid Wayne Logan appeals the district court's reimbursement order for attorney fees and restitution. He contends the district court erred by failing to determine a method of payment for his reimbursement of Board of Indigent Defense Services (BIDS) attorney fees and for his restitution. He also argues that the district court abused its discretion in setting the amount of those fees by failing to consider his financial circumstances and the burden of the payment. For the reasons stated below, we affirm.

1

*Factual and Procedural Background*

In late 2015, Logan pleaded no contest to aggravated criminal sodomy, kidnapping, attempted rape, robbery, and aggravated assault. The district court sentenced him to 372 months in prison.

During his first appearance, Logan filed a financial affidavit for a court-appointed attorney. Logan claimed he had no income, as he had lost his job. His girlfriend contributed $733 a month to his household income. But his monthly expenses were $200 for car payments and $225 in rent. Logan also claimed his son as a dependent. Based on that information, the district court appointed him an attorney and assessed him a BIDS application fee.

At sentencing, the district court ordered Logan to pay $3,471.62:

- $978.62 in restitution,
- $193 in court costs,
- $200 for a DNA Database Fee,
- $2,000 in BIDS attorney fees, and
- $100 for a BIDS application fee.

Before ordering the BIDS attorney fees and application fee, the district court determined that they would not cause undue burden or hardship. But on appeal, a panel of this court held that the district court's undue burden or hardship finding was inadequate under *State v. Robinson*, 281 Kan. 538, 546-47, 132 P.3d 934 (2006) because the district court had failed to explicitly weigh the factors of Logan's financial resources and the burden that payment fee would impose, as the plain language of K.S.A. 22-4513(b) requires. *State v. Logan*, No. 116,837, 2018 WL 671909, at *10 (Kan. App. 2018)

2

(unpublished opinion). The panel vacated the district court's assessment and remanded for reconsideration of BIDS attorney fees.

On remand, the district court reassessed Logan's ability to pay, citing the *Robinson* factors, and assessed $1,500 in BIDS attorney fees. This order brought Logan's new total costs to $2,971.62. Neither Logan nor his trial counsel objected to this order.

Logan timely appeals.

*Did the District Court Violate K.S.A. 22-4513(b) and K.S.A. 2019 Supp. 21-6604(i)?*

Logan contends K.S.A. 22-4513(b) and K.S.A. 2019 Supp. 21-6604(i) require a district court, when ordering BIDS attorney fee reimbursement, to determine a method of payment. Logan argues that the district court must determine, at least, how a defendant will pay and when the fees are due. Because the district court did not explicitly do so, he asks this court to remand for reconsideration of his BIDS attorney fees.

*Preservation*

The State argues that Logan has not preserved this issue. Issues not raised before the district court generally cannot be raised on appeal. See *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). This is, in large part, because appellate courts are not courts of first resort—our role is not to make findings but merely to review findings made by the district court. See *State v. Thomas*, 288 Kan. 157, 161, 199 P.3d 1265 (2009).

Our Supreme Court requires an appellant to explain why we should consider for the first time on appeal an issue not raised earlier. Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34). It has warned that litigants who skirt Rule 6.02(a)(5) "risk a ruling that an issue improperly briefed will be deemed waived or abandoned." *State v. Williams*, 298

Kan. 1075, 1085, 319 P.3d 528 (2014). The court has also emphasized that we should strictly enforce Rule 6.02(a)(5) and that failure to follow it could cause abandonment of the claim. See *State v. Godfrey*, 301 Kan. 1041, 1044, 350 P.3d 1068 (2015); *Williams*, 298 Kan. at 1085.

Logan concedes that he raises this issue for the first time on appeal, yet he contends this should not preclude appellate review. He cites two cases in which our appellate courts chose to review the district court's failure to consider the defendant's financial resources or the burden of reimbursement, even with no objection in the district court: *Robinson*, 281 Kan. at 541 (reaching the issue because it involved only a question of law on proved or admitted facts that determined the case); *State v. Knight*, 44 Kan. App. 2d 666, 687, 241 P.3d 120 (2010) ("[A] failure to object to the imposition of BIDS fees has not disallowed parties from raising the issue for the first time on appeal."). But those cases merely show that the appellate courts may choose to reach the merits of BIDS fees issue—they do not compel us to do so.

We choose not to review this issue. The mere assertion of an exception to the issue preservation rule does not obligate an appellate court to exercise its discretion and review the issue. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017). As our Supreme Court recently reminded us in *State v. Gray*, 311 Kan. 164, 170, 459 P.3d 165 (2020):

> "The decision to review an unpreserved claim under an exception is a prudential one. *State v. Parry*, 305 Kan. 1189, 1192, 390 P.3d 879 (2017); *State v. Frye*, 294 Kan. 364, 369, 277 P.3d 1091 (2012). Even if an exception would support a decision to review a new claim, we have no obligation to do so. *Parry*, 305 Kan. at 1192."

We decline to use any potentially applicable exception to review Logan's new statutory claim. Logan got the chance to present this argument to the district court not once, but twice before, yet failed to do so. This failure deprived the trial judge of the

4

opportunity to address the issue in the context of this case, and such an analysis would have benefitted our review. We therefore decline to address this new argument on appeal.

*Did the District Court Abuse Its Discretion by Ordering Logan to Pay $1,500 in BIDS Attorney Fees?*

Logan also argues that no substantial competent evidence supports the district court's findings. Relatedly, he also claims the district court abused its discretion by failing to explicitly weigh his financial circumstances and burden of the payment and by failing to explain *how* it weighed those factors. We find no preservation problem as to this issue. See *Matter of Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995) (parties need not preserve sufficiency of evidence issues).

*Standard of Review*

This court performs an unlimited review of whether a district court followed statutes governing the assessment of attorney fees. And we review the amount of attorney fees imposed for an abuse of discretion. *State v. Buck-Schrag*, 312 Kan. 540, 555, 477 P.3d 1013, 1025-26 (Kan. 2020). A judicial action constitutes an abuse of discretion if (1) it is arbitrary, fanciful, or unreasonable; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018). The party asserting the district court abused its discretion bears the burden of showing such abuse of discretion. *State v. Thomas*, 307 Kan. 733, 739, 415 P.3d 430 (2018).

*Analysis*

When ordering reimbursement of BIDS attorney fees, the district court must explicitly consider the defendant's financial resources and the nature of the burden that payment will impose, stating on the record how those factors weighed in the court's

decision. *Robinson*, 281 Kan. at 546-47. As this court did on Logan's first appeal, Kansas appellate courts have often vacated reimbursement orders of BIDS attorney fees and remanded for more findings because the district court failed to explicitly consider these two factors under *Robinson*. Often these remands occur because the district court simply made no findings at all before ordering attorney fees. See, e.g., *State v. Phillips*, 289 Kan. 28, 42-43, 210 P.3d 93 (2009); *Knight*, 44 Kan. App. 2d at 686-87. And, in Logan's case under his first reimbursement order, the district court failed to explicitly determine Logan's financial resources and weigh them against the burden of reimbursement.

But here, the district court considered Logan's financial resources and the nature of the burden a reimbursement would impose:

"[THE COURT:] The only issue is *Robinson*, the *Robinson* factors, and the Court's reassessing attorney fees if any. Mr. Logan, what's your highest level of education?

"[LOGAN]: Just got my high school diploma.

"THE COURT: And you were employed in the past, it was Chili's; is that correct?

"[LOGAN]: Yeah.

"THE COURT: And you were a cook there?

"[LOGAN]: I was a dish washer getting ready to get trained as a prep cook.

THE COURT: And how much were you making as a dish washer?

"[LOGAN]: Nine dollars an hour.

"THE COURT: How much would you make as a prep cook?

"[LOGAN]: Actually nine twenty-five.

"THE COURT: Okay. And do you have any children?

"[LOGAN]: Yes.

"THE COURT: How many children do you have?

"[LOGAN]: One.

"THE COURT: How many?

"[LOGAN]: One.

"THE COURT: And do you owe any back child support?

"[LOGAN]: No.

"THE COURT: Do you have any other medical or other debt that I should be aware of?

"[LOGAN]: No.

"THE COURT: Do you have any mental or physical disabilities that prevent you from working full-time?

"[LOGAN]: No.

"THE COURT: Do you have any other assets or income that I should be aware of?

"[LOGAN]: No.

"THE COURT: Are you employed currently while in custody?

"[LOGAN]: I was working in the kitchen.

"THE COURT: Okay. How much were you making there?

"[LOGAN]: A dollar five a day.

"THE COURT: And is there any other aspect of your financial circumstance I should be aware of in calculating an appropriate attorney fee?

"[LOGAN]: Not that I know of.

. . . .

"THE COURT: Okay. Based upon the defendant's sentence length, the income capacity while incarcerated, as well as lack of financial obligations, family unit size, the Court would find that a $1,500 attorney fee is appropriate. It's not an undue burden or a hardship and that's based upon weighing all of the factors that we've just discussed, including all costs already imposed."

The district court questioned Logan about his finances, education level, previous work, family size, and the availability of financial resources in prison. Logan responded that he had recently received his high school diploma, had worked in restaurants, had one child, did not owe back child support, had no medical debt, and currently worked for a $1.05 a day in the prison kitchen. The district court also gave Logan and his counsel a chance to state any other aspect of his financial circumstances that would affect the calculation of an appropriate attorney fee. But Logan had nothing to add. In determining whether its reimbursement order would be appropriate, the district court explicitly

7

considered Logan's length of sentence, his income in the prison, and his financial obligations.

The district court thus made explicit findings sufficient to comply with the requirements of K.S.A. 22-4513(b). *State v. Perdue*, No. 117,190, 2018 WL 297204, at *1-5, (Kan. App. 2018) (unpublished opinion) (affirming BIDS attorney fees assessment where district court made similar findings to this case). Based on this record, we conclude that the district court did not abuse its discretion by ordering Logan to reimburse $1,500 in BIDS attorney fees.

*Did the District Court Err by Not Providing a Payment Plan for Logan's Restitution?*

Similar to his Issue I, Logan claims in Issue III that the district court erred by not providing a payment plan for its order of restitution.

While Logan's appeal was pending, the Legislature changed the applicable law. The newly amended K.S.A. 2020 Supp. 21-6604(b)(3) states:

> "(3) If a restitution order entered prior to the effective date of this act does not give the defendant a specified time to pay or set payment in specified installments, the defendant may file a motion with the court prior to December 31, 2020, proposing payment of restitution in specified installments. The court may recall the restitution order from the agent assigned pursuant to K.S.A. 20-169, and amendments thereto, until the court rules on such motion. If the court does not order payment in specified installments or if the defendant does not file a motion prior to December 31, 2020, the restitution shall be due immediately."

Logan's restitution order was entered before the effective date of this act and does not give him a specified time to pay or set payment in specified installments. This statute thus permits Logan to file a motion with the district court regarding the method of paying

8

restitution. So on Logan's request, and because time was of the essence, we stayed appeal of this issue, remanded it to the district court so Logan could timely file a motion with the district court, maintained jurisdiction, and ordered counsel to give us status reports.

A status report filed January 12, 2021, states:

- the district court held a hearing on December 15, 2020, at which Logan and his defense counsel appeared;
- Logan's defense counsel and the judge's administrative assistant both told appellant's counsel that defendant waived his right to establish a payment plan at that hearing; and
- appellant's counsel intended to move to withdraw Issue III from defendant's appellant's brief.

But the next status report, filed February 3, 2021, was to a different effect:

"Upon further clarification, at the December 15, 2020, hearing, Mr. Logan waived his right to have a payment plan established *at that time* because (1) he had been diagnosed with Covid-19, which resulted in him being transferred to another facility and losing his KDOC job; and (2) his appeal was still pending. Mr. Logan did not waive his *future* right to have the district court establish a payment plan after his appeal is final.

. . . .

"Issue III remains in Mr. Logan's brief."

Thus we do not find that Logan withdrew Issue III. Nor do we find that issue to be moot.

Nonetheless, we find that Logan's sole remedy is under the amended statute and that he has waived his right to the statutory remedy. Because Logan's case was on appeal when the Legislature changed K.S.A. 2020 Supp. 21-6604(b)(3), those changes apply to

9

him. See *State v. McAlister*, 310 Kan. 86, 91, 444 P.3d 923 (2019) (a defendant has a right to receive the benefit of any change in the law that occurs while the direct appeal is pending). His remedy for the district court's alleged error in not providing a payment plan for its order of restitution lies solely with the district court by making a timely motion under K.S.A. 2020 Supp. 21-6604(b)(3).

We stayed any ruling on Logan's appeal of this issue at Logan's request. We stayed our ruling to permit Logan to exercise his statutory right to file a motion with the court before December 31, 2020, seeking payment of restitution in specified installments. We informed Logan of the deadline and advised him why we were staying the restitution issue on appeal. The district court swiftly complied, appointing counsel for Logan and holding a timely hearing so Logan could make his motion.  Logan and his counsel appeared at that hearing.

Yet Logan chose not to make the necessary motion in the district court before the statutory deadline ran. Despite having every opportunity to do so, Logan chose at the December 15, 2020 hearing not to propose specified installments to the district court for his payment of restitution. Instead, he voluntarily waived his right to have the district court timely establish installment payments. See *State v. Beaman*, 295 Kan. 853, 858, 286 P.3d 876 (2012) ("The test for determining the waiver's validity is whether it was voluntarily made by a defendant who knew and understood what he or she was doing."). We thus lift the stay of Logan's third issue and discontinue the order for counsel to make status reports.

To the extent that the status report suggests that Logan may believe he has some *future* right to have the district court establish installment payments after his appeal is final, we hold Logan fails to adequately support this claim. *State v. Gonzalez*, 307 Kan. 575, 592, 412 P.3d 968 (2018) ("Simply pressing a point without pertinent authority, or without showing why it is sound despite a lack of supporting authority or in the face of

10

contrary authority, is akin to failing to brief an issue. When a party fails to brief an issue, that issue is deemed waived or abandoned.").

Affirmed.