No. 124,904

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

In the Matter of the Marriage of

NANCY KARANJA-MEEK,
*Appellee*,

and

AARON MARSHALL MEEK,
*Appellant*.

SYLLABUS BY THE COURT

1.

Under K.S.A. 2023 Supp. 60-252 and Supreme Court Rule 165 (2024 Kan. S. Ct. R. at 232), a party seeking to preserve a claim for appeal that a district court's judgment lacks sufficient factual findings or conclusions of law must object to such or move to alter or amend the judgment based on such inadequacy. However, when a district court sufficiently states its factual findings and conclusions of law, a party need not file a motion under K.S.A. 2023 Supp. 60-252 to preserve a claim that the trial court erroneously applied the stated legal theory to the specifically stated factual findings.

2.

In an action for divorce, annulment, or separate maintenance, the district court's determination about which property is defined as marital property pursuant to K.S.A. 23-2801(a) is a question of law subject to de novo review.

3.

In actions for divorce, annulment, and separate maintenance when the parties' property is not subject to division under some other agreement, the district court has broad discretion to equitably divide all property owned by married persons pursuant to K.S.A. 23-2802(c). This court reviews the district court's division of property pursuant to K.S.A. 23-2802 for an abuse of discretion.

4.

In Kansas when the parties' property is not subject to division under some other agreement, upon commencement of divorce, annulment, or separate maintenance actions all property owned by married persons—whether maintained or defined as separate property under K.S.A. 23-2601 or not—becomes marital property pursuant to K.S.A. 23-2801(a).

5.

When no other agreement dictates otherwise, personal injury awards or settlements received during marriage are marital property under K.S.A. 23-2801(a).

Appeal from Johnson District Court; K. CHRISTOPHER JAYARAM, judge. Oral argument held September 20, 2023. Opinion filed May 31, 2024. Reversed and remanded with directions.

*Joseph W. Booth*, of Lenexa, for appellant.

*Jonathan Sternberg*, of Jonathan Sternberg, Attorney, P.C., of Kansas City, Missouri, for appellee.

Before ATCHESON, P.J., ISHERWOOD and HURST, JJ.

HURST, J.:  Nancy Karanja-Meek and Aaron Marshall Meek were married for about eight years before Nancy filed for divorce. After resolving many issues in their

divorce proceeding, Nancy and Aaron went to trial to seeking resolution of the division of their property, including two large personal injury awards with future payments. At the core of this appeal is how the district court categorized and divided those personal injury awards. Aaron claims that the district court erred by identifying Nancy's personal injury award as her separate property not subject to equitable division in their divorce. Nancy disagrees, arguing that the district court properly identified both of their personal injury awards as separate property not subject to equitable division.

Neither party's arguments are availing. The district court erroneously characterized both personal injury awards—not just Nancy's—as separate property. That means the district court should have included both Aaron's and Nancy's personal injury awards as marital property under K.S.A. 23-2801 subject to equitable division pursuant to K.S.A. 23-2802. While the district court erroneously classified the personal injury awards as separate property, such misclassification might not affect the district court's equitable property division. However, because the district court erred in classifying the property subject to division, this case must be remanded for consideration of whether the court's equitable property division must be adjusted when both personal injury awards are included as marital property under K.S.A. 23-2801(a).

FACTUAL AND PROCEDURAL BACKGROUND

Nancy Karanja-Meek and Aaron Marshall Meek were married in November 2009. In February 2013, while still married, Aaron suffered serious, catastrophic injuries in an explosion in Kansas City, Missouri. Later that year, Aaron brought two personal injury claims against several defendants alleging negligence and strict liability. Nancy also brought a claim against the same defendants for loss of consortium.

On July 13, 2015, Aaron and Nancy settled their personal injury claims for a substantial sum through a confidential settlement agreement. Aaron and Nancy

3

were each awarded large lump-sum payments with the remaining amount placed in annuities with monthly and periodic payments for the remainder of their lives with guaranteed payments until 2045.

In December 2017 Nancy filed for divorce. At the time of filing, they had two children and Nancy was pregnant with their third. Among other things, Nancy and Aaron disagreed about how the future annuity payments from their personal injury award settlements should be divided. Nancy and Aaron failed to settle their divorce through mediation, and in January 2021 the district court appointed a special master because the district court believed their property division presented complex issues.

At a pretrial conference in August 2021, the parties agreed that the special master's report would be submitted to the court for review. The court's pretrial order documented the parties' positions related to division of the personal injury award annuities. Nancy argued that at the time of settlement she and Aaron agreed that the annuities were awarded individually and would not be subject to division. Even so, she agreed that the monthly income from the separate annuities to each party should be treated as income for calculating support and maintenance. Aaron disagreed and claimed that Nancy had received a substantial amount for her consortium claim and "that the gross inequity in the settlement payout should be taken into account in this divorce proceeding." Therefore, Aaron claimed the court should order all, or the vast majority, of Nancy's future annuity payments to him.

The special master distributed their report shortly after the August pretrial conference in which they explained that the analytical approach should be used to divide the property and "wife's loss of consortium settlement would be compensating her for her loss of companionship, cooperation, aid, affection and sexual relations, as well as compensating her for her pain and suffering, and as such, would be designated as her separate property." The special master's report explained:

4

"Black's Law dictionary defines loss of consortium as '[a] loss of the benefits that one spouse is entitled to receive from the other, including companionship, cooperation, aid, affection, and sexual relations. Black's Law dictionary (8th ed. 2004). This type of claim refers to the pain-and-suffering experienced by a spouse as a result of an injury to that spouse's partner. Brett indicates that, 'if the uninjured spouse receives an award for loss of consortium, however, that award it is also compensation for pain-and-suffering, and thus the separate property of the uninjured spouse.' Brett R. Turner, Equitable Distribution of Property §6:54 (3rd ed. 2005).

. . . .

"The Court of Appeals' decisions in *Powell*, *Buetow*, and *Lash*, clearly indicate that in Kansas, when an injured spouse receives a personal injury award, it is marital property, subject to division, utilizing the *analytic approach*. Such approach requires an examination of each separate component of the settlement recovery, to determine the purpose of each component, to determine if each said component is marital property or separate property." (Emphasis added.)

The special master conceded it had "no way of knowing how the parties and their attorney arrived at how the settlement proceeds were going to be assigned to each party . . . ."

*Divorce Trial*

Aaron and Nancy resolved child custody and support issues before trial. As part of the trial and settlement efforts both parties prepared documents identifying the marital property. Nancy did not include her annuity as marital property in her worksheet. At trial, Nancy confirmed she and Aaron both received a monthly annuity payment from their personal injury awards in addition to any regular income and that Aaron's annual income was $67,344 less than her annual income. As such, Nancy agreed to pay a spousal maintenance obligation to Aaron calculated using her annuity income.

Nancy testified that the annuities arose through litigation where Aaron suffered a personal injury and she suffered a continuing loss of consortium. She stated, "I lost the man I loved. I lost Aaron, the Aaron that was there before he got injured." Aaron testified that in the divorce he was "requesting that things be clarified and that monies that were paid out for my life and wellbeing and loss of work be redirected my direction." Aaron was troubled that his wife had been given an approximately equal personal injury award even though he was severely physically injured and she was not. Aaron testified that Nancy "was supposed to be my caretaker and make sure they're looking out for my best interest." He later testified that at the time of the settlement that he "was still getting over [his] injury and [he] was still highly medicated, and Nancy was making the decisions." Aaron also confirmed that he was alleging he was forced or coerced into the settlement agreement because he felt he did not have control of anything at the time.

Ultimately Aaron's and Nancy's personal injury settlements and the conditions for which they received payment are irrelevant to this court's review.

*District Court's Journal Entry and Decree of Divorce*

The district court issued its Journal Entry and Decree of Divorce on January 3, 2022. It granted Aaron spousal maintenance at the parties' agreed rate and noted that the parties included the annuity payments as "'income'" when arriving at the agreed amount. The court explained that "in a vacuum, the structured payments to each party are likely more properly characterized as a 'property right' and not 'income' for support or taxation purposes," but still granted Aaron the agreed upon maintenance.

The district court then concluded that it should apply the analytical approach used by Kansas appellate courts to classify the parties' personal injury awards and associated annuities as either marital or separate property. It then found that the annuities were

6

"'separate property' that should be maintained by and set aside to each litigant respectively."

> "The Court notes that the parties previously agreed, years ago, upon a division of the total settlement compensation from their personal-injury litigation, which was done with the advice, input, and oversight of a very capable and skilled trial counsel. At that time, the parties agreed that all proceeds (including the funds that purchased the annuities at issue) were compensation for what are essentially 'non-economic' (and thus, non-taxable) losses that each sustained. It would be inherently unfair to now relitigate the nature of such payments and re-cast the resulting annuity as something else, such as an income-stream replacement or any other similar measure of apportionable losses of 'consortium,' as Respondent would request."

In a footnote, the district court rejected Aaron's contention that he was coerced, misled, or fraudulently induced into executing the settlement agreement. The court found Aaron's testimony "self serving and, at best, a dubious attempt to now relitigate the nature and extent of such settlement proceeds—in contravention of basic legal principles of res judicata and of fundamental interests of finality, justice, and certainty."

Aaron appeals and Nancy requests appellate attorney fees.

DISCUSSION

Aaron appeals the district court's determination that Nancy's personal injury award was "separate property" not subject to equitable division in their divorce proceeding. Specifically, Aaron asserts that the district court failed to correctly apply the analytical approach and the district court erred in finding res judicata applied. Courts across the country have commonly applied two approaches—the mechanical or analytical—to determine whether personal injury awards obtained during marriage are considered marital property. See, e.g., *In re Marriage of Buetow*, 27 Kan. App. 2d 610, 611, 3 P.3d

7

101 (2000) (explaining the two approaches and applying the analytical approach); see also *Parde v. Parde*, 258 Neb. 101, 108-09, 602 N.W.2d 657 (1999) (explaining the two approaches). Under the mechanical approach, personal injury awards are per se classified as marital property consistent with the relevant statutory language. See *Drake v. Drake*, 555 Pa. 481, 497, 725 A.2d 717 (1999) (applying the mechanical approach). But under the analytical approach—as explained more fully below—the court determines whether a personal injury award is marital or separate property by evaluating the nature and underlying reason for the award. See, e.g., *In re Marriage of Buetow*, 27 Kan. App. 2d at 611-12.

Before reviewing the substantive issues, this court must address Nancy's contention that Aaron's claim of error is unpreserved.

## I.     AARON'S CLAIMS ARE PRESERVED FOR APPEAL

Nancy asserts that Aaron failed to preserve his argument that the trial court erroneously applied the law because he either failed to object to the district court's decision or failed to move to alter or amend the district court's judgment. Whether Aaron's claim is preserved is a question of law over which this court exercises unlimited review. *Johnson v. Board of Directors of Forest Lakes Master Assn.*, 61 Kan. App. 2d 386, 393, 503 P.3d 1038 (2021).

First, Nancy argues that Aaron's claim on appeal was not raised before the district court and is thus unpreserved. See *Gannon v. State*, 303 Kan. 682, 733, 368 P.3d 1024 (2016) (noting that generally matters not raised before the district court cannot be raised for the first time on appeal). Aaron correctly notes that the district court addressed whether and how to apply the analytical approach to distribute the parties' personal injury awards. The parties raised the issue of how to categorize the annuities—as marital or separate property—in their property spreadsheets. The pretrial order also identified the

division of the annuities as "[t]he main issues in this trial." The special master's report, which was provided to the court and included as an exhibit at trial, encouraged the court to use the analytical approach. At trial, Aaron argued Nancy's annuity should be considered marital property, although he did not specifically argue for use of the analytical approach. However, the district court addressed the issue and applied the analytical approach to the facts in its Journal Entry and Decree of Divorce. "[R]ule 6.02 does not require an appellant to be the party who raised an issue below in order to claim error on appeal." *Russell v. Treanor Investments, L.L.C.*, 311 Kan. 675, 682, 466 P.3d 481 (2020) (finding appellant did not raise legal issue for the first time on appeal because the district court initiated the question sua sponte). Clearly, the parties and court addressed how to categorize the personal injury awards, including use of the analytical approach, and it is not being argued for the first time on appeal.

Second, Nancy argues that Aaron needed to file a postjudgment motion under K.S.A. 2023 Supp. 60-252 to preserve his claim that the district court erroneously applied the analytical approach. When an action is tried to the court and not a jury, the district court's judgment must include specific findings of fact and conclusions of law. K.S.A. 2023 Supp. 60-252(a)(1); Kansas Supreme Court Rule 165 (2024 Kan. S. Ct. R. at 232). The district court must "find the facts specially and state its conclusions of law separately. The *findings* and conclusions may be stated on the record after the close of evidence, or may appear in an opinion or a memorandum of decision filed by the court." (Emphasis added.) K.S.A. 2023 Supp. 60-252(a)(1). "This requirement is in part for the benefit of the appellate courts in facilitating review," because meaningful review is precluded "[w]here the trial court's findings of fact and conclusions of law are inadequate to disclose the controlling facts or the basis of the court's findings . . . ." *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 378, 855 P.2d 929 (1993).

In *In re Marriage of Bradley*, the court addressed this issue and explained:

"In all actions under K.S.A. 60-252 and Rule 165, when the trial court has made findings, it is not necessary to object to such findings to question the sufficiency of the evidence on appeal. However, if the findings are objectionable on grounds other than sufficiency of the evidence, an objection at the trial court level is required to preserve the issue for appeal. If, however, the appellate court is precluded from extending meaningful appellate review, the case may be remanded although no objection was made in the trial court." *In re Marriage of Bradley*, 258 Kan. 39, 50, 899 P.2d 471 (1995).

The *Bradley* court explained that appellate challenges "that pertain to the form and specificity of the oral or written *findings*" are not preserved when the appellant fails to make a postjudgment objection to such inadequacy. (Emphasis added.) 258 Kan. at 48.

Nancy misinterprets the court's statement in *Bradley* to mean that "challenges to the legal reasoning or methodology in a trial court's divorce judgment are not preserved where the appellant did not file a postjudgment motion raising his objections" because such challenges are "on grounds other than sufficiency of the evidence." On the contrary, in *Bradley* the court refers to the district court's *findings*—which in the context of applying K.S.A. 2023 Supp. 60-252 means *factual findings*—not legal analysis. 258 Kan. at 47-48 (explaining the rules requiring more specific findings).

Following *Bradley*, panels of this court have held that a party seeking to preserve an argument for appeal that the district court's judgment is based on insufficient or inadequate factual findings or conclusions of law must object to the inadequacy or move to alter or amend the judgment. See *In re Marriage of Poggi*, No. 121,012, 2020 WL 5268841, at *3-4 (Kan. App. 2020) (unpublished opinion) (appellant challenged adequacy of trial court's findings, where he argued the court did not make the required written findings for the appellate court to review whether it used appropriate factors); *In re Marriage of Rodrock*, No. 115,078, 2017 WL 2494704, at *4-5 (Kan. App. 2017)

10

(unpublished opinion) (appellant did not preserve issue for appeal when trial court failed to account for significant marital debt and there were no factual findings related to the debt in trial court's judgment); *In re Marriage of Friars*, No. 113,512, 2016 WL 2609622, at *4 (Kan. App. 2016) (unpublished opinion) (appellant argued trial court failed to make sufficient findings of fact and conclusions of law but failed to move for additional findings before appeal).

Aaron does not claim the district court's Journal Entry and Decree of Divorce lacks factual findings or legal conclusions. Rather, he asserts that the district court improperly applied the stated law to the stated facts. An appellant need not file a motion under K.S.A. 2023 Supp. 60-252(b) to preserve a claim that the district court erroneously applied the law to sufficiently stated factual findings and legal conclusions. Unlike the cases Nancy relied on, here the parties argued to the district court regarding the specific distribution of those assets; the district court had all the information necessary to make its judgment; and the district court fully described the factual findings, legal reasoning, and conclusion in its order. Thus, Aaron's claims are preserved for appellate review.

Moreover, this court has prudential authority to review unpreserved claims which involve only a question of law that arise from proven facts. See *State v. Great Plains of Kiowa County, Inc.*, 308 Kan. 950, 953-54, 425 P.3d 290 (2018) ("The rule that an issue must be submitted to the district court or to the Court of Appeals before we may consider it is prudential in character."). As explained above, Aaron's claims were thoroughly presented to and addressed by the district court in its Journal Entry and Decree of Divorce. Thus, nothing prevents appellate review of the issue. See 308 Kan. at 953-54 ("This court will exercise its discretion to address such an argument when failure to acknowledge the argument would tend to create bad precedent or mislead parties attempting to navigate the complexities of legal rights and duties.").

11

II. THE DISTRICT COURT ERRED BY NOT INCLUDING AARON'S AND NANCY'S PERSONAL INJURY SETTLEMENTS AS MARITAL PROPERTY

In Kansas, property division in divorce proceedings is governed by statute. In an action for divorce, annulment, or separate maintenance the district court must first identify the property subject to division, and then it has broad discretion to equitably divide that property. See K.S.A. 23-2801; K.S.A. 23-2802. The district court's identification of marital property subject to division in a divorce, annulment, or separate maintenance proceeding is a question of law subject to unlimited appellate review. See *In re Marriage of Monslow*, 259 Kan. 412, 414, 420-21, 912 P.2d 735 (1996); see also *In re T.S.*, 308 Kan. 306, 309, 419 P.3d 1159 (2018) (appellate courts exercise unlimited review of statutory interpretation).

This court exercises unlimited review over statutory interpretation. *Nauheim v. City of Topeka*, 309 Kan. 145, 149, 432 P.3d 647 (2019). When interpreting statutes, the most fundamental rule "is that the intent of the legislature governs if that intent can be ascertained." *Stewart Title of the Midwest v. Reece & Nichols Realtors*, 294 Kan. 553, 557, 276 P.3d 188 (2012). Statutory interpretation begins with the "plain language of the statute, giving common words their ordinary meaning," and when that plain language is clear and unambiguous this court "refrain[s] from reading something into the statute that is not readily found in its words." *In re M.M.*, 312 Kan. 872, 874, 482 P.3d 583 (2021). This court also considers the statutory provisions together to "give effect, if possible, to the entire act" and read the provisions "so as to make them consistent, harmonious, and sensible." *State v. Bee*, 288 Kan. 733, Syl. ¶ 4, 207 P.3d 244 (2009).

*During a Divorce Proceeding, Kansas Defines All Property Owned by the Married Parties as Marital Property*

In Kansas, during the marriage a married person's "separate property" is not subject to disposal by the other spouse and generally may not be used to satisfy the other spouse's debts. K.S.A. 23-2601. Separate property is defined as:

"The property, real and personal, which any person in this state may own at the time of the person's marriage, and the rents, issues, profits or proceeds thereof, and any real, personal or mixed property which shall come to a person by descent, devise or bequest, and the rents, issues, profits or proceeds thereof, or by gift from any person . . . ." K.S.A. 23-2601.

A married person's "separate property" "shall remain the person's sole and separate property, notwithstanding the marriage, and not be subject to the disposal of the person's spouse or liable for the spouse's debts . . . ." K.S.A. 23-2601.

However, upon the commencement of a divorce, annulment, or separate maintenance action, all property owned by either spouse—including "separate property" defined in K.S.A. 23-2601—becomes marital property. K.S.A. 23-2801(a).

"All property owned by married persons . . . *whether described in K.S.A. 23-2601*, and amendments thereto, or acquired by either spouse after marriage, and whether held individually or by the spouses in some form of co-ownership, such as a joint tenancy or tenancy in common, shall become marital property at the time of commencement by one spouse against the other of an action in which a final decree is entered for divorce, separate maintenance, or annulment." (Emphasis added.) K.S.A. 23-2801(a).

This means that the protections keeping "separate property" safe from disposal by the other spouse only apply before commencement of a divorce, annulment, or separate

maintenance action. See K.S.A. 23-2801; K.S.A. 23-2601. Moreover, upon the commencement of such actions, each spouse obtains an ownership interest in the entire pot of marital property. K.S.A. 23-2801(b). "Each spouse has a common ownership in marital property which vests at the time of commencement of such action, the extent of the vested interest to be determined and finalized by the court, pursuant to K.S.A. 23-2802 . . . ." K.S.A. 23-2801(b).

The clear, unambiguous statutory language provides that upon commencement of divorce proceedings, marital property includes any separate property in K.S.A. 23-2601. K.S.A. 23-2801(a); see also *Cady v. Cady*, 224 Kan. 339, 344-45, 581 P.2d 358 (1978) (explaining marital property during divorce). Decades ago, the court in *Cady* explained:

> "The filing for divorce, however, has a substantial effect upon the property rights of the spouses. At that moment each spouse becomes the owner of a vested, but undetermined, interest in all the property individually or jointly held. The court is obligated to divide the property in a just and equitable manner, regardless of the title or origin of the property." 224 Kan. at 344.

Furthermore, in Kansas all property owned by married persons is subject to equitable division during a divorce. In a dissolution of marriage, the court "shall divide the real and personal property of the parties, including any retirement and pension plans, whether owned by either spouse prior to marriage, acquired by either spouse in the spouse's own right after marriage or acquired by the spouses' joint efforts." K.S.A. 23-2802(a).

The Kansas Law and Practice treatise describes property division in divorce proceedings as follows:

> "Kansas as a common law jurisdiction follows equitable distribution rather than community property principles. In community property states and some common law states with marital property concepts, property acquired before marriage and that acquired by gift, bequest or devise after marriage are classed as separate property not

14

subject to division by the court. All property acquired after the marriage is presumed to be 'marital' property which the spouses co-own and is subject to division. Therefore, tracing ownership is crucial in community property states but commingling of premarital and marital assets over time may make 'origin' or contribution difficult to ascertain.

"Since 1963, Kansas has been a 'total divisibility' state which means that the trial judge can divide all of the real property and personal property owned at the time of filing in a just and reasonable manner regardless of its source or the manner of its acquisition. When dividing the property, the court is not obligated to award each party the property owned by the party prior to the marriage or received by gift or inheritance during the course of the marriage.

"In an equitable distribution state, inability to trace the exact origins will not be as important as in a community property state. The Kansas court can divide property owned by either spouse in his or her own right before or after marriage as well as property acquired by joint efforts—not just the net increase in the parties' assets during the marriage." 2 Elrod, Kansas Law and Practice:  Kansas Family Law § 10:1 (2022-2023 ed.).

"In Kansas, separate property is recognized prior to filing for divorce, annulment or separate maintenance. Once a petition is filed, all property becomes 'marital' and subject to equitable division by the trial judge." 2 Elrod, Kansas Law and Practice:  Kansas Family Law § 10:1.

*The Analytical Approach Cannot Be Used to Identify Marital Property in Kansas*

Despite a clear statutory requirement that upon commencement of a divorce, annulment, or separate maintenance action all property owned by the married parties is defined as marital property—the district court applied the analytical approach to find that both personal injury awards were separate property not subject to equitable division in the divorce. Aaron claims that under the analytical approach, the district court should have identified Nancy's personal injury award as marital property and reapportioned all

15

or most of the future annuity payments to him. Aaron correctly notes that panels of this court have applied the analytical approach to determine whether personal injury awards during marriage are marital property during divorce. See *In re Marriage of Smith*, No. 109,901, 2014 WL 3907092, at \*2-3 (Kan. App. 2014) (unpublished opinion) (discussing the analytical approach in determining whether a FELA award is marital or separate property); *In re Marriage of Buetow*, 27 Kan. App. 2d at 611 (explaining the two approaches and applying the analytical approach); *In re Marriage of Powell*, 13 Kan. App. 2d 174, 180, 766 P.2d 827 (1988) (finding personal injury settlement marital property by analyzing the nature of the underlying loss).

Under the analytical approach, the purpose of the personal injury award dictates whether the court identifies the award as marital or separate property. Applying the analytical approach, the personal injury award is classified as marital or separate property depending "'upon the nature of the underlying loss.'" *In re Marriage of Buetow*, 27 Kan. App. 2d at 611-12. The court looks to the nature and circumstances of the personal injury award and determines whether the payment is for a particular spouse, both spouses, or the family. 27 Kan. App. 2d at 611-12; see also *Parde*, 258 Neb. at 108-09 (explaining the two approaches).

In *In re Marriage of Buetow*, the panel was persuaded by Colorado and Nebraska's reliance on the analytical approach to determine whether a personal injury award should be separate or marital property. 27 Kan. App. 2d at 612-13. The panel explained that Colorado had found workers compensation benefits were marital property when they compensated for lost earnings and medical expenses incurred during marriage but were separate property when they compensated for post dissolution loss of earning capacity even if the injury occurred during the marriage. 27 Kan. App. 2d at 612 (analyzing *In re Marriage of Smith*, 817 P.2d 641, 644 [Colo. App. 1991], which adopted the analytical approach). But the applicable Colorado statutes differ from Kansas in how courts must dispose of property upon dissolution of marriage. In Colorado, the court "shall set apart

16

to each spouse his or her property and shall divide the marital property . . . in such proportions as the court deems just after considering all relevant factors . . . ." Colo. Rev. Stat. § 14-10-113(1); see also Colo. Rev. Stat. § 14-10-113(2) (stating nonmarital property includes gifts, bequests, devises or descents, property acquired before marriage, and property acquired in exchange for property acquired before marriage).

Similarly, in Nebraska, "the marital estate should include only property created by the marital partnership." *Parde*, 258 Neb. at 108. In Nebraska they "classify as a threshold matter the parties' property as either marital or nonmarital" which is known as "dual classification." *Stephens v. Stephens*, 297 Neb. 188, 899 N.W.2d 582, 592 (2017); see also *Parde*, 258 Neb. at 108-09. In *Parde,* the Nebraska court explained:

> "Compensation for purely personal losses is not in any sense a product of marital efforts. We, therefore, hold that compensation for an injury that a spouse has or will receive for pain, suffering, disfigurement, disability, or loss of postdivorce earning capacity should not equitably be included in the marital estate. On the other hand, compensation for past wages, medical expenses, and other items that compensate for the diminution of the marital estate should equitably be included in the marital estate as they properly replace losses of property created by the marital partnership." *Parde*, 258 Neb. at 109-10.

The Nebraska Supreme Court explained that reliance on the analytical approach is "more consistent with the basic rule that the marital estate should include only property created by the marital partnership." 258 Neb. at 108. The Colorado and Nebraska approaches to property division in divorce proceedings are antithetical to the Kansas procedure. The Kansas Legislature clearly intends that upon commencement of divorce, annulment, or separate maintenance proceedings, all property—whether separate or not—becomes "marital property" subject to the court's equitable property division. See K.S.A. 23-2801.

Other states applying the analytical approach to determine whether personal injury awards are defined as marital or separate property have distinct statutory schemes from

17

Kansas. See *Rizzo v. Rizzo*, 120 A.D.3d 1400, 1402, 993 N.Y.S.2d 104 (2014) (citing N.Y. Domestic Relations Law § 236.B.1.c., d.[2]) (noting that personal injury settlements typically constitute at least partially separate property, but the purchase of the annuity with right of survivorship converted personal property to marital property where under the applicable statute, "[m]arital property shall not include separate property" and "[t]he term separate property shall mean: . . . compensation for personal injuries"). In Alabama the parties in divorce actions may retain separate property estates and the court generally "may not take into consideration any property acquired prior to the marriage of the parties *or by inheritance or gift* unless" the judge finds the property has been used to benefit the parties during marriage. (Emphasis added.) Ala. Code § 30-2-51(a); see also *Kaufman v. Kaufman*, 934 So.2d 1073, 1080 (Ala. Civ. App. 2005); *Smith v. Smith*, 959 So.2d 1146, 1148-49 (Ala. Civ. App. 2006). Mississippi appellate courts also adopted the analytical approach, where the court's property division in divorce proceedings requires that "[f]irst, the character of the parties' assets, i.e., marital or nonmarital, must be determined" and "[t]he marital property is then equitably divided, . . . in light of each part[y's] nonmarital property." *Johnson v. Johnson*, 650 So.2d 1281, 1287 (Miss. 1994); see also *Hemsley v. Hemsley*, 639 So.2d 909, 915 (Miss. 1994) (applying the analytical approach to identifying marital property).

States with statutory schemes like Kansas apply the mechanical approach which essentially means they follow the statutory definitions that require personal injury awards be classified as marital property regardless of their purpose. See *Drake*, 555 Pa. at 491 n.6, 497 (applying the mechanical approach to find a personal injury award is marital property when the applicable statute states that "[a]ll . . . property acquired by either party during the marriage is presumed to be marital property regardless of whether title is held individually or by the parties . . . ." 23 Pa. Stat. § 3501[b]). Additionally, in New Hampshire the appellate court applied the mechanical approach noting that its statutory scheme is not like dual classification jurisdictions. *In re Preston*, 147 N.H. 48, 49-50, 780 A.2d 1285 (2001). New Hampshire defines property subject to division in divorce as "all

tangible and intangible property and assets, real or personal, belonging to either or both parties, whether title to the property is held in the name of either or both parties." N.H. Rev. Stat. Ann. § 458:16-a(I). These states applying the mechanical approach have statutory provisions similar to Kansas in which all property, no matter how owned or held, becomes marital property during a divorce action.

Unlike states that employ the analytical approach to identify marital or separate property in divorce actions, Kansas does not have a dual classification statutory scheme. During a divorce action in Kansas, all property owned by married persons is combined into one pot of *marital property*. See K.S.A. 23-2801 (in a divorce action, marital property includes property identified as separate property in K.S.A. 23-2601); K.S.A. 23-2802 (describing how the district court must divide property in a divorce proceeding); see also *Cady*, 224 Kan. at 344-45 (explaining that all property is marital property during divorce proceedings). Rather than considering the origin, purpose, or use of the personal injury awards and annuities to determine whether they are marital property, Kansas law requires the district court to define the personal injury awards and associated annuities as marital property subject to equitable division. As Nancy notes, this applies to both annuities—not just hers—and both Aaron's and Nancy's personal injury awards and annuities are marital property under K.S.A. 23-2801.

This outcome is consistent with precedent, follows the clear statutory language, and adheres to the Legislature's intent, but it may differ from how courts have addressed personal injury awards in practice. See *In re Marriage of Smith*, 2014 WL 3907092, at *2-3 (discussing the analytical approach in determining whether a FELA award is marital or separate property); *In re Marriage of Buetow*, 27 Kan. App. 2d at 611-12; *In re Marriage of Powell*, 13 Kan. App. 2d at 180. However, this difference may have little effect on the district court's ultimate property division because many of the concepts underlying the analytical approach are included when dividing the marital property pursuant to K.S.A. 23-2802(c). Here, the district court applied an amorphous standard to

19

identify the marital property that was inconsistent with the clear statutory obligations. On remand, after applying the correct statutory criteria, the district court might reach the same property division—but this court cannot assume such an outcome. Nor can this court impose its view of how the marital property should be divided and find the error harmless because doing so would usurp the district court's authority to divide marital property.

*This Court Cannot Address Whether the District Court Abused Its Discretion in Its Property Division*

After the court identifies marital property under K.S.A. 23-2801, it must then determine how to equitably divide that property. Such division can be in kind, by awarding property to one party and requiring the other to pay a just and proper sum, or by ordering the property sold and the parties to divide the proceeds. K.S.A. 23-2802(a). After appropriately identifying the marital property "in conformity with the statute, the district court has wide discretion in adjusting the financial obligations of the parties in a divorce action." *In re Marriage of Monslow*, 259 Kan. at 414. In deciding how best to divide the marital property, the district court shall consider:

> "(1) The age of the parties; (2) the duration of the marriage; (3) the property owned by the parties; (4) their present and future earning capacities; (5) *the time, source and manner of acquisition of property*; (6) family ties and obligations; (7) the allowance of maintenance or lack thereof; (8) dissipation of assets; (9) the tax consequences of the property division upon the respective economic circumstances of the parties; and (10) such other factors as the court considers necessary to *make a just and reasonable division of propert*y." (Emphases added.) K.S.A. 23-2802(c).

The district court has wide discretion to make a "just and reasonable division of property." *In re Marriage of Rodriguez*, 266 Kan. 347, Syl. ¶ 1, 969 P.2d 880 (1998); see K.S.A. 23-2802(c)(10); see also *In re Marriage of Traster*, 301 Kan. 88, 97-98, 339 P.3d

778 (2014) (The "statute includes a list of factors the district court should review and further allows consideration of 'such other factors as the court considers necessary to make a just and reasonable division of property'").

As Professor Linda D. Elrod explained:

"The concept of 'marital' property gives a spouse a vested interest in the other spouse's property from the time of filing for divorce, annulment or separate maintenance. The extent of that interest is determined by the court. As a practical matter, however, to divide the property 'equitably' will require a determination of how and when property was acquired, and sometimes marital/community property principles are often found to be equitable." 2 Elrod, Kansas Law and Practice: Kansas Family Law § 10:1.

Kansas is an "equitable division state rather than a community property state" that does not require an equal split of marital property but rather "'gives the court discretion to consider all of the property, regardless of when acquired, to arrive at a just and reasonable division.'" *In re Marriage of Rodriguez*, 266 Kan. at 352-53.

On appeal, this court reviews the district court's equitable division of property for an abuse of discretion, which occurs when the decision "is based on a legal or factual error or if no reasonable person would agree with the court's decision." *In re Marriage of Thrailkill*, 57 Kan. App. 2d 244, 261, 452 P.3d 392 (2019). Here, this court cannot review the district court's property division because it erroneously categorized the parties' annuities as "'separate property' that should be maintained by and set aside to each litigant respectively." Therefore, the district court made an error of law in identifying the marital property subject to division which must be corrected before evaluating its property division under K.S.A. 23-2802. However, requiring the district court to reclassify the parties' personal injury awards does not necessarily require the district court to change its equitable property division.

21

Aaron asked the district court to "re-apportion a significant percentage of [Nancy's] future payments from the annuity issued to her as an equitable division of their property." The district court noted that Aaron was already receiving increased maintenance based on including Nancy's annuity as her income. Thus "it would be similarly unfair, unjust, and inequitable to permit [Aaron] to benefit from a significant award of spousal maintenance that was calculated based upon monthly payments from the annuity (as 'income') while at the same time reapportioning the amounts of those payments and redirecting that same 'income' stream back to [Aaron]." The court explained that awarding Aaron the annuity proceeds and maintenance calculated from including the annuity payments in Nancy's income "would, indeed, result in a 'double-dipping' windfall" to Aaron.

While this court cannot review the district court's property division, it appears the court considered all the property—marital and separate—in making its division. Therefore, recategorizing Nancy's and Aaron's annuities as marital property rather than separate property does not necessarily require any change in the result of the court's equity analysis. However, that remains the purview of the district court. See *In re Marriage of Wherrell*, 274 Kan. 984, 986, 58 P.3d 734 (2002) ("[T]he district court is vested with broad discretion in adjusting the property rights of parties involved in divorce actions" and "that discretion will not be disturbed on appeal absent a clear showing of abuse.").

III.     THE DISTRICT COURT'S STATEMENTS DO NOT CREATE AN ERROR

Finally, Aaron argues that the district court erred in finding he was "'relitigating'" the settlement and that res judicata applied. The court's comment on this issue was included in a footnote to the Journal Entry and Decree of Divorce and stated:

22

> "The Court also rejects [Aaron]'s contention that he was in any way coerced into the agreement at that time; nor does the Court believe that he was misled or fraudulently induced into executing the agreement—as he indicated at trial. The Court finds such testimony self serving and, at best, a dubious attempt to now relitigate the nature and extent of such settlement proceeds—in contravention of basic legal principles of res judicata and of fundamental interests of finality, justice, and certainty."

The court's comment about res judicata was unrelated to its analysis addressed herein, but was a rebuke of Aaron's tactics. Aaron also argues that the district court erred in chastising him for not including his own annuity as property the court should divide. The district court's comments about Aaron's tactics are unrelated to its thorough analysis and Journal Entry and Decree of Divorce and Aaron fails to show any error associated with the comments.

## IV.    NANCY'S MOTION FOR APPELLATE ATTORNEY FEES IS DENIED

On January 19, 2024, this court received Nancy's motion seeking appellate attorney fees, arguing such an award was warranted because Aaron's appeal was unreasonable. This court may award attorney fees if it "finds that an appeal has been taken frivolously, or only for the purpose of harassment or delay." Supreme Court Rule 7.07(c) (2024 Kan. S. Ct. R. at 52). For the reasons discussed herein, Aaron's appeal was not frivolous and Nancy's motion for appellate attorney fees is denied.

## CONCLUSION

Upon commencement of an action for divorce, annulment, or separate maintenance when no other agreement applies, Kansas courts must identify all property—including any designated as separate property before the action—as marital property subject to equitable division. As such, courts may not use the analytical approach to determine whether property is defined as marital or separate property in such

23

actions. The district court erred in defining the parties' personal injury awards and associated annuity payments as separate property during their divorce proceedings.

This case is reversed and remanded. On remand, the district court must treat both annuities as marital property and make an equitable distribution of the marital property consistent with the considerations in K.S.A. 23-2802(c) for a just and reasonable property division.

Reversed and remanded with directions.